# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

**HALEY L. WILLIAMS**                                                      **PLAINTIFF**

**V.**                                          **CIVIL ACTION NO.  3:17CV821 CWR-LRA**

**NANCY BERRYHILL, ACTING**
**COMMISSIONER OF SOCIAL SECURITY**                           **DEFENDANT**

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff appeals the final decision denying her application for Supplemental

Security Income (SSI).  The Commissioner requests an order pursuant to 42 U.S.C.

§405(g), affirming the final decision of the Administrative Law Judge.  Having carefully

considered the hearing transcript, the medical records in evidence, and all the applicable

law, the undersigned recommends that this cause be affirmed.

In March 2010, Plaintiff's mother filed an SSI application on her behalf, alleging a

disability date of December 1, 1992, due to Tetralogy of Fallot, blood problems, and

heart trouble.  Plaintiff was 17 years old at the time of the filing but turned 18 years old

prior to her administrative hearing.  The application was denied initially and later upon

reconsideration.  Following agency denials of her application, Administrative Law Judge

("ALJ") Charles Pearce rendered an unfavorable decision finding that Plaintiff had not

established a disability within the meaning of the Social Security Act.  The Appeals

Council granted Plaintiff's request for review and remanded the case, with instructions to

obtain additional evidence and further evaluate Plaintiff's disability claim.

Upon further review and a second administrative hearing, ALJ Pearce issued a second unfavorable decision on October 10, 2013.  The Appeals Council denied Plaintiff's second request for review, and she appealed the denial to this Court on October 9, 2014.

On appeal, United States Magistrate Judge F. Keith Ball found that ALJ Pearce failed to satisfy his duty to develop the record, rendering his decision unsupported by substantial evidence -- specifically determining that the ALJ erred in failing to include the recognized restrictions on overhead reaching in his hypothetical and, in failing to engage in the analysis under 20 C.F.R. § 404.1527(c).  *Williams v. Colvin* (*Williams I*), No. 3:14CV785-FKB, 2016 WL 1306281 (S.D. Miss. Mar. 31, 2016).  On March 21, 2016, this case was reversed and remanded to the Commissioner for further consideration.

On remand, this matter was reassigned to ALJ Laurie H. Porciello, who was directed by the Appeals Council to take any further action needed to complete the administrative record, including obtaining additional evidence and issuing a new decision.  Upon review, ALJ Porciello observed that while Plaintiff's prior application was pending in federal court, she filed a new application on November 18, 2014.  The ALJ consolidated Plaintiff's new application with her previous claim and considered Plaintiff's complete medical history pursuant to 20 C.F.R. § 416.912(d), in accordance with both the childhood standard of disability for the time period prior to Plaintiff turning 18, and the adult standard of disability after she turned 18.  After considering additional evidence and conducting a new administrative hearing, ALJ Porciello concluded that

2

Plaintiff had not established a disability within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's third request for review.  She now appeals that decision.

Although ALJ Porciello evaluated Plaintiff's claims pursuant to both the childhood and adult disability standards, Plaintiff challenges only the evidence and findings under the adult standard in the instant appeal.

At step one of the five-step sequential evaluation for adult claimants,[1] the ALJ determined that Plaintiff may have engaged in substantial gainful activity since her application was initially filed in March 2010, but she declined to make a definitive finding at this step of the evaluation.[2]  At step two of the evaluation, the ALJ found that although Plaintiff's status post repair Tetralogy of Fallot;[3] status post attempted stenting with displacement and subsequent removal and reconsideration; impulse control disorder

---

[1] Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Sub-part P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform?  *See also McQueen v. Apfel*, 168 F.3d 152,154 (5th Cir. 1999).

[2] Although Plaintiff has never worked, she reported over $10,000 in earnings in 2015 for helping to babysit her boyfriend's nephew.  She did not actively care for the baby but watched him while he slept.  ECF No. 10, p. 1217.

[3] As explained in *Williams I*, "Tetralogy of Fallot is a rare condition caused by a combination of four defects in the heart present at birth, as follows: a hole between the lower chambers of the heart, an obstruction from the heart to the lungs, placement of the aorta over the hole in the lower chambers, and an overly thickened muscle surrounding the lower right chamber of the heart." 2016 WL 1306281 at * 9, n. 2. (citing American Heart Ass'n, *Tetralogy of Fallot*, http://www.heart.org/HEARTORG/Conditions/CongenitalHeartDefects/AboutCongenitalHeartDefects/Tetralogy-of-Fallot_UCM_307038_Article.jsp.) "The condition prevents the normal amount of blood from being pumped to the lungs and also results in some oxygen-poor blood being pumped to the body through the hole in the wall between the right and left ventricles." *Id.*

not otherwise specified; and, mood disorder were severe, they did not meet or medically equal any listing.  At step four, the ALJ found that since turning 18 years old, Plaintiff has had the residual functional capacity to perform light work with the following limitations:

> she should never climb ladders, ropes or scaffolds and should only occasionally balance, stoop, kneel, crouch, crawl, or climb ramps or stairs; she cannot reach overhead with the non-dominant upper extremity; and she is limited to performing only simple, routine tasks, with only occasional interaction with the public or coworkers.[4]

Based on vocational expert testimony, the ALJ concluded that given Plaintiff's age, education, work experience, and residual functional capacity, she could perform light work as a cleaner, bench assembler, and small parts assembler.  Although the ALJ did not make an alternative step-five finding, she also observed that even if limited to sedentary work with the same non-exertional limitations, Plaintiff could perform sedentary work as an electronics worker.

## Standard of Review

Judicial review in social security appeals is limited to two basic inquiries: "whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence.'" *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (citation omitted).  Evidence is substantial if it is "relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*

---

[4] ECF No. 10, p. 1226.

*v. Chater*, 67 F.3d 558, 564 (5ᵗʰ Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d at 295

(5th Cir. 1992)).  This Court may not re-weigh the evidence, try the case *de novo*, or

substitute its judgment for that of the ALJ, even if it finds evidence that preponderates

against the ALJ's decision.  *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

### Discussion

Plaintiff's sole issue on appeal challenges ALJ Porciello's evaluation on remand

of the medical opinions submitted by her treating specialists at the University of

Mississippi Medical Center (UMMC).  Specifically, Plaintiff claims that the ALJ failed to

follow the proper legal standards by failing to give due consideration to the medical

opinions submitted by her treating pediatric cardiologist, Dr. Charles Gaymes.

Dr. Gaymes is a pediatric cardiologist within the Department of Pediatric

Cardiology at UMMC, where Plaintiff has reportedly been followed for her heart

condition since childhood.  Although both Plaintiff and Dr. Gaymes assert that he has

seen her every 6-12 months since her birth, as observed in *Williams I*, the administrative

record does not include records dating back to her birth.  Medical records show that

Plaintiff was also followed by UMMC pediatric cardiologists, Dr. James Clinton Smith

and Dr. Avichal Aggarwal, as well as others in the department.  Dr. Smith's treatment

notes, which begin in 2009, indicate that he treated Plaintiff on a regular basis until May

2011.  When he retired, Dr. Aggarwal took over Plaintiff's cardiac care and treated her in

August 2011 and January 2012.  Plaintiff was also followed by Dr. Gaymes, whom she

saw in May 2012, June 2012, August 2012, March 2013, April 2013, May 2014, and June

2015.  Prior to this later treatment, Dr. Gaymes also performed the insertion of Plaintiff's defibrillator and catheterization in April 2010.[5]

Medical records show Plaintiff has undergone several surgical procedures over the years as a result of her congenital heart condition, including repair, stent placement, and pacemaker placement, with the last occurring in 2010.  Although she has not undergone any additional surgery since becoming an adult, she continues to report chest pain, shortness of breath, and fatigue.  At the administrative hearing before ALJ Porciello, Plaintiff testified that her chest pain is so severe that she spends most of the day in bed, getting up only to use the bathroom.  The pain – reportedly a seven or eight on a scale of ten – increases when she bends and stoops; prevents her from performing any household chores; and, prohibits her from leaving the house except for appointments.  She also experiences constant fatigue because she sleeps only two or three hours a night and has occasional dizziness which causes her to fall a lot.  She cannot sit for longer than 30 minutes; stand longer than 5 to 10 minutes; or, raise her left arm without pain because of her pacemaker.  As of her last administrative hearing, Plaintiff was 5 feet, 4 inches tall weighing 224 pounds, and testified that despite losing approximately 74 pounds, her mobility has gotten worse.  In addition to her physical limitations, she also suffers from mental impairments, including crying spells, anger issues, and excessive stress.

---

[5] *Id.* at 1131-1164, 1632-1639, 1757-1762.

*Treating Specialists*

### 1. Dr. Smith

The administrative record does not include a medical source statement or many records from Dr. Smith.  On examination in February 2011, he notes that Plaintiff had persistent chest pain post-operatively to a 2008 repair but no significant chest pain since an "automatic implantable cardioverter-defibrillator was subsequently placed by Dr. Gaymes."  In May 2011, he notes that Plaintiff was experiencing occasional chest pain after falling in a bathtub.  He diagnosed her with chest wall pain secondary to trauma and prescribed Ibuprofen.[6]

### 2. Dr. Gaymes

The record contains several opinions from Dr. Gaymes concerning Plaintiff's physical and mental limitations.  The first and only narrative opinion, dated July 2012, was submitted after he took over her care from Dr. Aggarwal, and was quoted by the ALJ in full as follows:

> This 20-year-old female has a history of complex medical disease including congenital heart disease, mental health problems, and obesity. Haley underwent surgical repair of her congenital heart disease (Tetralogy of Fallot) with a modified right Blalock-Taussig shunt in September 1992. She then underwent ligation of the BT shunt and full repair with a pulmonary homograft in June 1994 with residual mild homograft stenosis and insufficiency. In December 2008, she underwent revision of the homograft with a Rastelli homograft. She then underwent an electrophysiology study in April 2010 and was noted to have ventricular tachycardia and therefore underwent placement of an implantable cardiac defibrillator. Haley continues to have residual mild homograft stenosis and insufficiency, mild to moderate pulmonary stenosis and mild pulmonary insufficiency. Haley has been followed for the above diagnosis since birth and her prognosis is

---

[6] ECF No. 10, pp. 634-56.

stable. She is currently taking multiple medications for her heart disease as well as her psychiatric problems. She continues to be symptomatic with severe chest pain which makes it hard for her to work steadily. This is a lifelong abnormality and she will require future cardiac surgery to replace the homograft as well as the defibrillator. Given the complex nature of her heart disease and long-term sequelae, kindly consider her for continued medical coverage. . . .[7]

In addition to the above opinion, Dr. Gaymes completed three Cardiac Residual Functional Capacity Questionnaires, two of which were expressly discussed by ALJ Porciello on remand. In these questionnaires, submitted in May 2012, September 2013, and August 2016, Dr. Gaymes opined that Plaintiff's chest pain, shortness of breath, fatigue, palpitations, and dizziness cause marked limitations in her physical activity. Specifically, he opined that she could walk 2 blocks; sit for 30 minutes; stand for 10 minutes; and, lift and/or carry less than 10 pounds. He also opined that Plaintiff would need to take frequent, unscheduled breaks every 30 minutes, and would be limited "to occasional stooping, crouching, and climbing stairs, while rarely climbing ladders and avoiding concentrated exposure to extreme temperatures, wetness, humidity, noise, pulmonary irritants, and hazards." He indicated that Plaintiff would also miss more than 4 workdays per month, and that in addition to her physical impairments, she could perform only low stress jobs. Her physical and cardiac symptoms were also severe enough that they would cause emotional difficulties and would interfere with her concentration.[8]

---

[7] ECF No. 10, p. 674.

[8] *Id*. at 260-265, 1196-1201, 1797-1802.

### 3. *Dr. Aggarwal*

As noted above, Plaintiff was also followed by Dr. Aggarwal prior to Dr. Gaymes. In August 2011, Dr. Aggarwal submitted a Pulmonary Residual Functional Capacity Questionnaire expressing many of the same opinions as Dr. Gaymes, including the opinion that Plaintiff could not stand or sit for more than two hours. He also assigned more restrictive postural and environmental limitations in certain areas. In comparison, Dr. Aggarwal's treatment notes from August 2011 state that Plaintiff's chest pain episodes were "most likely musculoskeletal in origin and also related to her weight." He recommended that she "lose some weight and start some diet and walking every day to which she has agreed." In a follow-up visit with Dr. Aggarwal in January 2012, Plaintiff reported that her she had started exercising and her chest pain had improved.

Upon reviewing his questionnaire, ALJ Pearce sent Dr. Aggarwal the following letter requesting additional information:

> You opine [Ms. Williams] can sit more than two hours of a workday yet you further opine that combined sitting and standing would amount to less than two hours of a workday. Is there an error? If the claimant is actually incapable of sitting and standing less than two hours of an eight-hour day, is it your position that she must lie down six hours of every eight hours? I ask because that is the only postural position left and she testified she does not lie down that much.[9]
>
> It will also be helpful if you can explain how you arrived at the restrictions you opine. I ask this because your notes of an office visit on August 4, 2011, show your conclusion that she was doing well and that her chest pain complaints were most likely musculoskeletal rather than cardiac.

---

[9] Conversely, in her hearing before ALJ Porciello, Plaintiff testified that she spends most of her day lying in bed.

> Are all persons with Ms. Williams's diagnoses and treatment restricted to
> the degree you opine or is Ms. Williams's case unusually severe?[10]

In response to the ALJ's inquiry, Dr. Aggarwal sent a letter dated May 2012 revising his initial opinion.  He advised that the limitation to "combined sitting and standing less than 2 hours in an 8-hour day was marked in error."  He explained that Plaintiff had a "long and complex medical history" and that his initial questionnaire was completed after their first visit.  During that visit, Plaintiff reported having multiple emergency room visits in recent months due to chest pain, which he felt was "most likely musculoskeletal in nature" because her defibrillator did not show any discharges.  He concluded by stating: "So, after carefully reviewing her chart and being more familiar with the severity of her disease I think her activity level should be almost the same as any other individual her age and weight."[11]

In response to Dr. Aggarwal's modified opinion, Plaintiff noted that Dr. Aggarwal had only seen Plaintiff twice and submitted Dr. Gaymes's opinions for consideration.  Upon review however, ALJ Pearce assigned Dr. Aggarwal's modified opinion greater weight.  As grounds, he explained that Dr. Gaymes's opinions were not entitled to "controlling weight nor even any particular deference," because they were "inconsistent with other substantial evidence."  The substantial evidence being Dr. Aggarwal's modified opinion that he thought Plaintiff's "activity level should be almost the same as any other individual her age and weight."[12]

---

[10] ECF No. 10, pp. 471-77, 671.

[11] *Id.* at 673.

10

The *Williams I* Court rejected this finding on appeal because Dr. Aggarwal's modified opinion did not "meet the standard of reliability required by *Newton* to render inapplicable the ALJ's duty to conduct the six-factor analysis under 20 C.F.R. § 404.1527(c)." The Court explained that "[s]ince the ALJ did not have "*reliable* medical evidence" from Dr. Aggarwal controverting Dr. Gaymes's opinions, he could reject Dr. Gaymes's opinion '*only*' if he performed a detailed analysis under the criteria set forth in 20 C.F.R. § 404.1527(c).'" *Williams I*, 2016 WL 1306281, at *9 (citations omitted) (emphasis added). The Court reversed and remanded so that the required analysis under 20 C.F.R. § 404.1527(c) could be performed. Plaintiff now brings the instant appeal alleging that ALJ Porciello made the same errors on remand as the ALJ in *Williams I*.

The law is well-settled. Generally, the opinion and diagnosis of a treating physician should be given significant weight in determining disability. *Kneeland v. Berryhill*, 850 F.3d 749, 760 (5th Cir. 2017). But the treating physician's rule is "not an ironclad rule." *Garcia v. Colvin*, 622 F. App'x 405, 410 (5th Cir. 2015). When treating source opinions are assigned little or no weight, the assignment must be predicated on good cause. *Newton*, 209 F.3d at 455-56. Good causes exist when treating source opinions are "brief and conclusory, not supported by medically acceptable clinical diagnostic techniques, or otherwise unsupported by the evidence." *Garcia,* 622 F. App'x at 410 (internal quotations and citations omitted). However, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating

---

[12] *Id*. at 1458.

specialist, an ALJ may reject the opinion of the treating physician **only** if the ALJ performs a detailed analysis of the treating physician's views using [§ 404.1527(c) factors." *Newton,* 209 F.3d. at 453 (emphasis in original). These factors require that an ALJ consider the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the supportability of the physician's opinion; the consistency of the opinion with the record as a whole; the specialization of the source; and, any other factors tending to support or contradict the physician's opinion.

This is not a case in which a treating specialist disagrees with an examining or consulting physician, however. Since childhood, Plaintiff has been under the care of three cardiologists within the Department of Pediatric Cardiology at UMMC, and there appears to be little variation among their examination findings in the administrative record. ALJ Porciello was charged with weighing the competing opinions submitted by Plaintiff's treating cardiologists in compliance with applicable legal standards. Plaintiff alleges the ALJ's decision again fails to comport with these standards. Specifically, she argues that, like the previous ALJ, ALJ Porciello failed to evaluate Dr. Gaymes's opinions under the criteria set forth in 20 C.F.R. § 1527 (c). She also argues that, like the previous ALJ, ALJ Porciello erred in assigning greater weight to Dr. Aggarwal's opinion. The undersigned considers each of these arguments in turn.

**1.**

On remand, ALJ Porciello gave the following reasons for declining to give Dr. Gaymes's opinions controlling weight:

While Dr. Gaymes is a treating specialist with a long-standing-treatment relationship with the claimant, these opinions did not receive controlling or even significant weight, since they are not consistent with the whole of the record. The limitations he propounds are not supported by the whole of the record, including his own treatment notes. For example, in May and August 2012, Dr. Gaymes limited her to "no highly aerobic, competitive sports. No strenuous activities." By March 2013, he wrote that she had "no restrictions" on her activities. Her doctor again noted that she had no restrictions after his May 2014 examination. Also, as discussed above, her cardiac complaints were often eventually ascribed to musculoskeletal problems. For example, she told emergency room doctors that her cardiologist told her that her chest pain resulted from a muscle instead of a cardiac problem in July 2015.

Further, this treating doctor's statements are inconsistent at times, and address mental symptoms. In both form statements, this doctor wrote that the claimant was capable of only low stress jobs. However, he also stated that stress did not play any role in her symptoms. He attributed this limitation to her mental impairments. He also wrote that she was diagnosed with "severe emotional dysfunction" and that her emotional factors contributed to the severity of her subjective symptoms and functional limitations. Dr. Gaymes is a doctor, but not a mental health specialist, and it does not appear he treats her for such complaints. It thus appears more likely than not that he was relying on her subjective reports of such symptoms. As relates to mental health limitations, his propounded limitations are not consistent with the report of the consultative psychologist, to whose opinion the undersigned has assigned greater weight as related to mental abilities and limitations.[13]

It is clear from the face of the ALJ's decision that she weighed Dr. Gaymes's opinions using each of the *Newton* factors before declining to give them controlling weight. The length, frequency, nature and extent of the treatment relationship, as well as the consistency and supportability of his opinions were all considered. The ALJ considered the first three factors by acknowledging that Dr. Gaymes had a longstanding

---

[13] ECF No. 10, p. 1230 (internal record citations omitted). The only treatment notes from Dr. Gaymes not expressly discussed by ALJ Porciello was Plaintiff's visit in June 2015, which mirrored the same findings documented in March 2013 and May 2014.

treating relationship with Plaintiff, and by recalling the diagnosis and treatment notes throughout her decision. *Jones v. Colvin*, 638 F. App'x 300, 304 (5th Cir. 2016). The ALJ considered the fourth and fifth factors when she compared his opinions with both his treatment notes, and those of her other pediatric cardiologists as well as the emergency room physicians from whom she also sought medical care for chest pain. *Id.* ALJ Porciello was also aware that Dr. Gaymes's medical specialty was pediatric cardiology.

Plaintiff does not dispute the ALJ's analysis concerning the supportability and consistency of Dr. Gaymes opinions with the record. She focuses instead on the frequency and length of their relationship, highlighting Dr. Gaymes's statements that he followed Plaintiff "every 6 months – 1 year since birth." But as noted *supra*, the administrative record does not include records since birth, and reflects that Plaintiff was also treated by both Drs. Smith and Aggarwal. The undersigned does not minimize the fact that Dr. Gaymes was Plaintiff's primary cardiologist, at least as of May 2012, nor the fact that his examinations are the most recent. What the Court cannot reconcile are the inconsistences between the limitations he identifies in his medical source statements and his treatment notes. Despite the limitations assigned, in April 2013, he writes: "Activities – No restrictions." His treatment notes from 2014 and 2015 are also negative for fatigue, shortness of breath, and chest pain, with the former revealing that Plaintiff walked almost a mile every day. [14]

---

[14] ECF No. 10, pp. 1151-64.

Given the conflict, it was not unreasonable for ALJ Porciello "to weigh a doctor's treatment notes against the doctor's ultimate determination." *Salmond v. Berryhill*, 892 F.3d 812 (5th Cir. 2018). In declining to give significant weight to Dr. Gaymes's opinions, "the ALJ performed her role of weighing conflicting evidence and resolving the conflict, and we perform our limited role of ensuring that this decision is supported by substantial evidence, which it is." *Heck v. Colvin*, 674 F. App'x. 411, 415 (5th Cir. 2017) (citing *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) ("Substantial evidence supports the ALJ's decision to disregard the physicians' conclusions. That basis is enough to support our review.")). "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Salmond*, 892 F.3d at 819 (quoting *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016). Given the lack of supporting evidence from Dr. Gaymes, and the other evidence discussed herein, the undersigned cannot say that no credible choices or medical findings support ALJ Porciello's decision to assign Dr. Gaymes's opinions lesser weight.

### 2.

Next, the undersigned turns to Plaintiff's assertion that ALJ Porciello erred in assigning greater weight to Dr. Aggarwal's opinion. ALJ Porciello explained that Dr. Aggarwal's modified opinion was entitled to greater weight because it was "based on more familiarity with the claimant and her treatment" than *his* initial 2011 opinion.[15] She

---

[15] Plaintiff suggests in her memorandum brief that, like the previous ALJ, ALJ Porciello erroneously believed that Dr. Aggarwal was more familiar with Plaintiff's condition because he saw her more frequently and recently than Dr. Gaymes. However, the undersigned does not so read her decision. ALJ Porciello simply interpreted Dr. Aggarwal's letter as written – i.e., that he modified his opinion after familiarizing himself more with her condition.

also found his modified opinion – that Plaintiff's "activity level should be almost the same as any other individual her age and weight" – to be more consistent with Dr. Gaymes's treating notes in March 2013 and May 2014 which showed no restrictions.

In *Williams I*, the Court found Dr. Aggarwal's modified opinion did not "meet the standard of reliability required by *Newton* to render inapplicable the ALJ's duty to conduct the six-factor analysis under 20 C.F.R. § 404.1527(c)."  The Court explained that the letter was both vague and based, in part, on an erroneous factual conclusion about the treating relationship between Dr. Gaymes and Plaintiff, specifically that Dr. Aggarwal had seen Plaintiff more frequently and recently than Dr. Gaymes.

> [I]n his May 2012 letter, the only specific opinion that Dr. Aggarwal identified as having been marked "in error" was his opinion that Williams's "combined sitting and standing [was] less than 2 hours in an 8-hour day." Dr. Aggarwal does not explicitly state in his May 2012 letter that all of his other opinions in the questionnaire were erroneous, for example, that Williams's experience of pain or other symptoms were severe enough to interfere often with attention and concentration needed to perform even simple work tasks or that Williams would have to take unscheduled breaks during a work day and would have to miss work more than four times a month as a result of her impairments or treatments. Nevertheless, in his opinion, the ALJ stated that he "d[id] not accept" and specifically rejected these opinions from Dr. Gaymes, despite the fact that the other treating cardiologist, Dr. Aggarwal, expressed the same opinions and never explicitly retracted them.

*Williams I*, 2016 WL 1306281, at *8.  Although the undersigned finds ALJ Porciello performed the requisite *Newton* analysis of Dr. Gaymes's opinions on remand, she did not directly address these deficiencies in her discussion of Dr. Aggarwal's opinions. While this would have been preferable, elsewhere in her decision, she explains the reasons for discounting those opinions that were not expressly retracted by Dr. Aggarwal.

16

With regard to Plaintiff's mental abilities and limitations, ALJ Porciello explained that she assigned greater weight to the opinions and examination findings of a consulting psychologist secured on remand *See* 20 C.F.R. §404.1527(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."). The examiner observed that Plaintiff was mildly depressed but could perform routine, repetitive tasks and interact with coworkers and supervisors. She had coherent thought processes; adequate remote and immediate memory recall; and, adequate attention and concentration, which was consistent with treatment notes from Weems Community Mental Health Services. Given this evidence, the ALJ found that although Plaintiff had moderate limitations in maintaining concentration, "she remains capable of the mental demands of work, if limited to performing simple, routine tasks which do not involve more than occasional interaction with the public and coworkers." Contrary to what Dr. Gaymes and Dr. Aggarwal initially opined, the evidence as a whole did not establish that Plaintiff's cardiac pain and other symptoms would cause greater interference with her ability to maintain attention and concentration. Nor did it establish that that she could not maintain attention and concentration within the determined residual functional capacity "without the need for additional breaks, excessive absences or other accommodations."[16]

With regard to the Plaintiff's physical impairments, the ALJ assigned significant weight to an SSA physician's opinion that Plaintiff could perform a reduced range of

---

[16] ECF No. 10, pp. 1229, 1717-1722.

light work,[17] finding it consistent with the record as a whole, including Dr. Aggarwal's modified opinion and Plaintiff's UMMC records from 2012 -2014. "The ALJ may rely on a non-examining physician's assessments so long as the report of the non-examining physician is not 'the sole medical evidence presented' and as long as the non-examining physician does not draw 'specific medical conclusions that either contradict or are unsupported by *findings* made by an examining physician.'" *Hill v. Berryhill*, 718 F. App'x 250, 255 (5th Cir. 2018) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1023–24 (5th Cir. 1990) (emphasis added)). This case presents neither of those situations. Although the non-examiner's report dated 2010 conflicts with the opinions of Plaintiff's treating specialists, it is supported by their examination findings.

Further, while Dr. Aggarwal's modified opinion lacks the sufficient specificity to render *Newton* inapplicable, his examination findings and other evidence generated on remand constitute competing first-hand medical evidence upon which the ALJ was entitled to rely. *Zimmerman v. Astrue*, 288 F. App'x 931, 935 (5th Cir. 2008); *Heck*, 674 F. App'x. at 415 (recognizing that an ALJ "is not required to give controlling weight to a treating physician opinion when . . . 'there is competing first-hand medical evidence.'") (quoting *Walker v. Barnhart*, 158 F. App'x. 534, 535 (5th Cir. 2005)). That evidence, discussed throughout ALJ Porciello's decision, includes echocardiograms from May

---

[17] *Id*. at 320-324. Light work, as defined by the regulations, "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). Further, a job constitutes light work when "it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*

2014 and June 2015 showing mild pulmonary stenosis and valve regurgitation; stable

pacemaker/ACID function; and progress notes showing improved chest pain.

In addition to the medical evidence, ALJ Porciello observed that the record as

whole did not support the degree of limitations and pain alleged.  Since becoming an

adult, Plaintiff has not undergone any additional surgeries, and "[a]though she has some

emergency room and doctor visits for chest pain, most of the presentations have not led to

cardiac diagnosis, with her symptoms instead thought to be musculoskeletal in origin."

Further, the ALJ noted that contrary to her testimony, Plaintiff told Dr. Aggarwal that her

chest pain episodes were less frequent and much better in January 2012.  And, while she

testified that she spends most of the day in bed, getting up only to go the bathroom, she

told Dr. Gaymes in May 2014 that she walks "about a mile almost daily."  Lastly, records

show that Plaintiff did not regularly fill her beta-blocker prescription despite it costing

only $4.00 per month under a reduced pricing plan.  It was not unreasonable for the ALJ

to find that if Plaintiff's symptoms "were as limiting as she would have them appear, she

would be more compliant with measures prescribed to alleviate those symptoms."[18]

Because it is clear from ALJ Porciello's final decision that she considered each of

the *Newton* factors before declining to give controlling weight to Dr. Gaymes's opinions,

Plaintiff has failed to meet her burden of establishing that she used the incorrect legal

standards to evaluate the evidence before her.  Because the ALJ also relied on competing

---

[18] ECF No. 10, pp. 1227-229, 1632-639.

first-hand evidence from treating specialists, including Dr. Gaymes, contradicting the limitations he assigned, the undersigned finds no basis to disturb the ALJ's decision.

In sum, based upon consideration of the evidentiary record as a whole, the ALJ determined that Plaintiff failed to establish that her impairments were of sufficient severity to establish disability. The undersigned's review of the record compels a finding that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the Local Uniform Civil Rules of the United States District Courts for the Southern District of Mississippi, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections. Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglas v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS the 11th day of February, 2019.


                                                    s/ Linda R. Anderson
                                      UNITED STATES MAGISTRATE JUDGE